IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHARED MEDICAL EQUIPMENT
GROUP, LLC,

                     Plaintiff,                     OPINION & ORDER

  v.

                                                 13-cv-631-wmc

SIMI VALLEY HOSPITAL AND
HEALTHCARE SERVICES,

                     Defendant.

---

In this civil action, plaintiff Shared Medical Equipment Group, LLC alleges that defendant Simi Valley Hospital and Healthcare Services breached contracts between them by failing to pay for damage done to its MRI system and for repair charges. Before the court now is defendant's motion to dismiss for lack of personal jurisdiction and for improper venue. (Dkt. #9.) Because Shared Medical has made out a prima facie case for this court's exercise of personal jurisdiction over Simi Valley and because venue is proper in this district, the court will deny the motion to dismiss.[1]

---

[1] Shared Medical has also moved to strike Simi Valley's reply brief, which was untimely and filed without the court's permission for an extension of time. (Dkt. #14.) On December 11, 2013, Simi Valley moved for an extension of time to reply in its brief opposing the motion to strike. (Dkt. #17.) Although Simi Valley should have filed a motion for an extension earlier, the court will deny the motion to strike, because the filing of the reply was only three days late and does not appear to have prejudiced Shared Medical.

ALLEGATIONS OF FACT[2]

Plaintiff Shared Medical is a Wisconsin limited liability corporation that is wholly owned by Shared Medical Services, Inc., a corporation organized under Minnesota law with its principal place of business in Wisconsin. Defendant Simi Valley is a corporation organized under California law and with its principal place of business in Simi Valley, California.[3] Simi Valley has no physical presence, facilities, real property, offices or registered agents in Wisconsin.

In 2009, Monica Berlin, Simi Valley's Administrative Director of Ambulatory Services, called Paul Zahn of Shared Medical to request information on pricing for the lease of a Parker Mobile MRI System. For more than a year, the parties negotiated over the terms of a proposed lease. Simi Valley eventually negotiated a lease with Shared Medical that included reduced rental fees, a quicker response time for service calls, more favorable payment terms and a California choice-of-law provision.

Consistent with those terms, the parties entered into the Magnetic Resonance Imaging Lease Agreement ("the Lease") on July 16, 2010. Under the Lease, Shared Medical retained ownership of the MRI system, as well as the responsibility to provide preventative maintenance and respond to service calls. The MRI system that Simi Valley leased was located at Shared Medical's headquarters in Cottage Grove, Wisconsin. Under the Lease, Simi Valley was required to pay the cost of transporting the system from Wisconsin to

---

[2] While plaintiff has the burden of establishing the existence of personal jurisdiction, he need only make a prima facie showing because defendant's motion to dismiss relies only on written materials and not on an evidentiary hearing. *Purdue Research Found. v. Sanofi-Synthelabo*, S.A, 338 F.3d 773, 782 (7th Cir. 2003). In deciding whether plaintiff has satisfied this standard, the court will resolve "all disputes concerning relevant facts presented in the record" in his favor. *Id*. (internal citations omitted); *see also Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980).

[3] The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

California.  The Lease also required Simi Valley to provide continuous power to the system to maintain the cryogenic temperatures that the superconducting magnet required to avoid magnet "quenching"[4]; Simi Valley was responsible for any damage caused by the interruption of electrical service to the system.

During the lease term, Simi Valley made nineteen calls to Wisconsin for service.  As required by the Lease, Shared Medical then arranged for repairs and service from its Wisconsin offices on behalf of Simi Valley.  In addition, Shared Medical received notice on October 5, 2010, that there was a problem with the system.  Shared Medical dispatched a representative from the manufacturer of the system, Phillips, to investigate.  Electronic data revealed that the system had been powered off for at least a month and that the superconducting magnet had quenched as a result.

Based on the terms of the Lease, Shared Medical looked to Simi Valley for payment to repair the quenched magnet.  Following extensive discussions, including 31 e-mails that Simi Valley sent to Shared Medical in Wisconsin and a meeting in Chicago, the parties signed a purchase order in which Simi Valley authorized a payment of up to $80,000 to cover Shared Medical's costs of repairing the system.  Simi Valley sent the purchase order to Shared Medical in Wisconsin, which then subcontracted for repair of the system and submitted an invoice to Simi Valley for payment.  Simi Valley indicated it would pay the invoice and made weekly cryogen report levels to Shared Medical for the next two and a half years to ensure proper maintenance of the magnet, but never paid the $80,000 invoice for repairs to the MRI system.

---

[4] "Quenching" occurs when the superconducting magnet gets too hot to generate a strong magnetic field, since superconducting magnets function only at extremely cold temperatures.

In June 2013, Simi Valley sent Shared Medical a 90-day notice of termination of the Lease. On July 1, 2013, Simi Valley e-mailed Shared Medical to ask if Shared Medical could find another lessee for the MRI system so that Simi Valley could exit the Lease early. In response, Shared Medical accordingly located another facility willing to take over the Lease, which allowed Simi Valley to save about $18,000 in rental payments.

OPINION

## I. Personal Jurisdiction

Plaintiffs have the burden of proving that personal jurisdiction exists. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) (citing *McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 223 (7th Cir. 1994)). In diversity cases like this one, a federal district court has personal jurisdiction "only if a court of the state in which it sits would have such jurisdiction." *Id.* (quoting *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995)). The inquiry is, therefore, a two-step process. The court must initially determine whether the Wisconsin long-arm statute, Wis. Stat. § 801.05, would subject Simi Valley to personal jurisdiction in Wisconsin courts. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990). If the answer is "yes," the court must then determine whether its exercise of personal jurisdiction under § 801.05 would violate the due process requirements of the Fourteenth Amendment.[5] *Id.*

---

[5] More recent decisions issued by the Seventh Circuit have collapsed these two steps, because "the constitutional and statutory questions tend to merge." *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012). This is because the Wisconsin long-arm statute is intended to go to the lengths of due process. *Id.* Because the parties here address the steps separately, however, so too will this court.

A. **Wisconsin Long-Arm Statute**

Wisconsin's long-arm statute is to be liberally construed in favor of exercising jurisdiction to the fullest extent allowed under the due process clause. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1012 (E.D. Wis. 2000) (citing *Johnson Worldwide Assoc., Inc. v. Brunton Co.*, 12 F. Supp. 2d 901, 906 (E.D. Wis. 1998)); *Daniel J. Hartwig Assocs.*, 913 F.2d at 1217. Shared Medical contends that three separate provisions in the long-arm statute authorize this court's exercise of personal jurisdiction over defendant Simi Valley. The first provides:

> A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances: . . .
>
> **(5) Local services, goods or contracts.** In any action which: . . .
>
> (d) Relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or direction.

Wis. Stat. § 801.05(5)(d).

Shared Medical contends that the MRI system was indisputably a "thing of value" shipped from Wisconsin to Simi Valley in California pursuant to the terms of the Lease. It also points out that Wisconsin courts have construed the term "relates" broadly. Accordingly, Shared Medical argues this court should exercise personal jurisdiction over Simi Valley under § 801.05(5)(d).

Simi Valley does not appear to dispute that the MRI system is a "thing of value" shipped from Wisconsin by plaintiff Shared Medical. Instead, it argues that (1) Shared Medical shipped the MRI system to California "unilaterally" rather than at its order or

direction; and (2) the action in this case does not arise from or relate to the shipment of the MRI system from Wisconsin to California. The court finds neither argument persuasive.

As for the contention that the MRI system was shipped "unilaterally" to California, Simi Valley acknowledges that the Lease required it (as the lessee) to pay for the costs of transporting the MRI system to California, but argues that requirement was not proposed by Simi Valley. Simi Valley also points out that the Lease itself "makes no mention of Wisconsin as the location from which the subject System was required to be shipped." (Reply (dkt. #14) 3.) Accordingly, Simi Valley argues that there is no evidence that it "ordered" or "directed" Shared Medical to ship the system from Wisconsin.

This argument is nothing but a strawman and a weak one at that. The inquiry under § 801.05(5)(d) is whether Shared Medical shipped the MRI system from Wisconsin at Simi Valley's behest, not whether Simi Valley volunteered to pay the shipping costs. Relying on the latter inquiry would essentially foreclose personal jurisdiction over out-of-state buyers or lessees, since few would volunteer to pay shipping. In any case, the undisputed facts demonstrate that Simi Valley entered into the Lease so that it could use the MRI system at its California facilities. Once Simi Valley agreed to the Lease terms, Shared Medical accordingly shipped the MRI system from Wisconsin to California. Simi Valley's contention that Shared Medical "unilaterally" shipped the MRI system from Wisconsin to California because Shared Medical required Simi Valley to pay the transport costs borders on the nonsensical.

Simi Valley's other argument -- that Shared Medical was not required to ship the MRI system *from Wisconsin* -- is also a non sequitur. While courts have found that a party's "unilateral decision" to perform certain acts in a state does not support a finding of personal

6

jurisdiction, *see, e.g.*, *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.*, 597 F.2d 596 (7th Cir. 1979), that principle applies in the context of due process under the Fourteenth Amendment; it is not grafted into § 801.05(5)(d). To the contrary, cases interpreting § 801.05(5)(d) stick strictly to the language of the statute and interpret it liberally to find personal jurisdiction, as the Wisconsin Supreme Court has required. *See, e.g.*, *Lakeside Bridge*, 597 F.2d at 600 (noting that § 801.05(5)(d) applied where plaintiff manufactured goods in Wisconsin and shipped them to Virginia, even though personal jurisdiction under the Fourteenth Amendment was ultimately inappropriate); *Kuhn Knight, Inc. v. VMC Enters., Inc.*, 464 F. Supp. 2d 806, 811 (W.D. Wis. 2006) (holding that "it is undisputed that defendants ordered a mixer from plaintiff in August 2006, and that the parties' present dispute arises out of defendant's alleged failure to pay for the mixer in a timely manner. Therefore, the Wisconsin long arm statute reaches defendant under § 801.05(5)(d)" but finding personal jurisdiction did not comport with due process). Here, it appears to be undisputed that Shared Medical shipped the MRI system from Wisconsin to Simi Valley at the latter's direction. Section 801.05(5)(d) requires no more.

Alternatively, Simi Valley argues that § 801.05(5)(d) does not apply because this action does not "relate to [Shared Medical's] *shipment* of the MRI System from Wisconsin." (Reply (dkt. #14) 3 (emphasis added).) Rather, it argues Shared Medical brings a breach of contract claim that occurred only after the MRI system was already in California. (*Id.*) This argument also read § 801.05(5)(d) too narrowly. That section requires only that the action relate to the "goods" or "things of value" that have been shipped from Wisconsin, not to the shipment itself. *See* Wis. Stat. § 801.05(5)(d). Simi Valley's interpretation would not only narrow this provision's applicability far beyond the text of the statute, but

7

would also be at odds with the Wisconsin Supreme Court's direction that the state's long-arm statute should be liberally construed in favor of personal jurisdiction. *See Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 391 (7th Cir. 1994) (citing *Schroeder v. Raich*, 89 Wis. 2d 588, 593, 278 N.W.2d 871 (1979)).

Not surprisingly, case law is also against Simi Valley. The Wisconsin Court of Appeals confronted a similar question in *Sub-Zero Freezer Co., Inc. v. R.J. Clarkson Co., Inc.*, 159 Wis. 2d 230, 464 N.W.2d 52 (Ct. App. 1990). In that case, Sub-Zero, a manufacturer in Wisconsin, terminated Clarkson's distributorship, and Clarkson refused to pay for certain goods it had already received. *Id.* at 233. Clarkson brought suit in South Carolina challenging the termination; Sub-Zero counterclaimed; and the suit ultimately settled. *Id.* Later, Sub-Zero filed suit in Wisconsin alleging breach of that settlement agreement. *Id.* at 232.

The court of appeals held that Wisconsin courts had jurisdiction over Clarkson pursuant to § 801.05(5)(d):

> [T]he instant action "[r]elates to goods . . . shipped from this state by the plaintiff to the defendant on the defendant's order." We reject Clarkson's contention that this action does not relate to "goods" but rather to its settlement agreement with Sub-Zero. The agreement settled claims arising from sales contracts. Those contracts involved goods shipped or to be shipped from Wisconsin and ordered by Clarkson. An action alleging breach of an agreement settling contract disputes concerning goods "relates" to those same goods.

*Id.* at 234.

As in *Sub-Zero*, Shared Medical alleges breach of the Lease and the Customer Quote Contract with Simi Valley. The Lease was for the MRI system, which was shipped from Wisconsin; the Customer Quote Contract merely clarified Simi Valley's existing obligation

to pay for Shared Medical's costs in effecting repairs to that same system. Therefore, the present action "relates" to the MRI system and fulfills the requirements of § 801.05(5)(d). Simi Valley's attempt to distinguish *Sub-Zero* is wholly unavailing, relying as it does on the same misguided characterization of the MRI system shipment as Shared Medical's "unilateral decision to ship the System from Wisconsin," which the court has already rejected.

Even *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.*, 597 F.2d 596 (7th Cir. 1979), which Simi Valley cites in support, suggests at minimum that jurisdiction lies under the long-arm statute. In that case, a Wisconsin plaintiff, Lakeside, visited a West Virginia defendant to solicit a subcontract for structural assemblies. The defendant accepted the proposal by mailing a purchase order addressed to Lakeside in Milwaukee. Lakeside manufactured the goods in Wisconsin and shipped them to Virginia. On those facts, the Seventh Circuit held that Wis. Stat. § 801.05(d), "on its face, *covers this case*, but is subject to the due process limitation [of the Fourteenth Amendment]." *Lakeside Bridge*, 597 F.2d at 600 (emphasis added). Accordingly, the court agrees with Shared Medical that § 801.05(5)(d) of Wisconsin's long-arm statute confers personal jurisdiction over Simi Valley in Wisconsin courts related to any dispute over the MRI system.[6]

B. Due Process

The court now turns to the second step of the Wisconsin personal jurisdiction inquiry. "[B]ecause Wisconsin presumes its long-arm statute merely codifies the federal due process requirements, the burden switches to [defendant] to show that jurisdiction would

---

[6] In light of this ruling, the court need not linger further over whether personal jurisdiction also exists under other statutory sections, as Shared Medical argued.

9

nonetheless violate due process." *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996) (internal citations omitted). As Simi Valley correctly recognizes, Shared Medical does not argue that Simi Valley is subject to general jurisdiction in Wisconsin, which would require continuous and systematic business contacts with the state. *See id.* (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Rather, Shared Medical contends that Simi Valley is subject to specific jurisdiction, which a state may exercise when the "defendant has a lesser degree of contact with the state, but the litigation arises out of or is related to those contacts." *Id.* (citing *Helicopteros Nacionales*, 466 U.S. at 414 n.8).

"In order to assert personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have purposefully availed himself of the privilege of conducting activity within the forum state, thus invoking the benefits and the protections of its laws." *Daniel J. Hartwig Assocs., Inc.*, 913 F.2d at 1217 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). In making that determination, the court must consider whether the defendant's conduct and contacts with the forum state are "such that he could reasonably anticipate being subjected to suit there." *Id.* at 1218. Contacts that are merely random, fortuitous or attenuated are not sufficient to establish that jurisdiction was foreseeable. *Id.* If minimum contacts do exist, the court must then determine whether jurisdiction "would be consistent with traditional notions of fair play and substantial justice." *Logan Prods.*, 103 F.3d at 52.

Simi Valley argues that the only contact it had with Wisconsin is the Lease it entered into with Shared Medical, which is not enough to support this court's exercise of personal jurisdiction over it. Simi Valley is correct insofar as a single contract does not *automatically*

10

establish that a party had minimum contacts in the other party's home forum. *See Burger King Corp.*, 471 U.S. at 478. But it does not follow that the contract be viewed in a vacuum without considering the surrounding circumstances as well. Indeed, in *Burger King Corporation*, the United States Supreme Court:

> emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors -- prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing -- that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Id.* at 479 (internal citation omitted). This court, therefore, reviews the parties' course of dealing, negotiations and contemplated future consequences to determine whether Simi Valley has purposefully established minimum contacts in Wisconsin.

Simi Valley relies on cases like *Jadair, Inc. v. The Walt Keeler Co., Inc.*, 679 F.2d 131 (7th Cir. 1982), and *Lakeside Bridge & Steel Co. v. Mountain State Constr. Co., Inc.*, 597 F.2d 596 (7th Cir. 1979), to support its assertion that the exercise of jurisdiction over it would be improper. In *Lakeside Bridge*, the Seventh Circuit considered whether a defendant who had placed an order with the plaintiff, a Wisconsin company, was subject to personal jurisdiction in Wisconsin. It held that exercising personal jurisdiction would not comport with due process, because "[v]iewed realistically, the contacts with Wisconsin in this case consist solely of '(t)he unilateral activity of (one) who claim(s) some relationship with a nonresident defendant,' and this 'cannot satisfy the requirement of contact with the forum State." *Lakeside Bridge*, 597 F.2d at 603 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (alterations in original). It went on to note that "[a]lthough [the defendant]

Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left [the plaintiff] Lakeside in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally." *Id.*

Similarly, in *Jadair*, the defendant, Keeler, contracted with Jadair, a Wisconsin company, to buy a machine. The negotiations took place in Wichita, Kansas, and the contract was agreed upon and executed in Wichita as well. While the unit was shipped from Wisconsin to defendant's plant, it apparently did not perform satisfactorily. Jadair then brought suit in Wisconsin state court to declare it free of any liability to Keeler. The Seventh Circuit rejected Jadair's argument that the phone calls and letters *after* the machine stopped functioning had jurisdictional significance. It held that the case presented even fewer contacts with the forum state than *Lakeside Bridge*, and was therefore "entirely governed" by its decision in that case:

> There, as here, we could assume that the buyer believed the seller would perform in Wisconsin. There, unlike here, the buyer had sent the purchase order to Wisconsin. There, and a fortiori here, the dearth of contacts made it unfair to require the out-of-state buyer to defend in a Wisconsin court.

*Jadair*, 679 F.2d at 134 (internal citations omitted). "Assuming that long-arm jurisdiction has some ... limits [in the commercial context]," the Seventh Circuit concluded, "surely the defendant whose sole contact with a state is that his seller's place of business is located there is entitled to invoke them." *Id.*

Certainly, under the *Jadair* and *Lakeside Bridge* decisions, the exercise of personal jurisdiction is improper when the only contact between the parties is a shipment from Wisconsin, when performance in Wisconsin is not required and is solely the decision of the

12

Wisconsin party. The court is not convinced, however, that this case is comparable to *Jadair* or *Lakeside Bridge*. First, as the Seventh Circuit has noted, "[t]he question of which party initiated or solicited a business transaction has long been considered pertinent to the constitutional propriety of personal jurisdiction in a suit arising out of the transaction." *Madison Consulting Grp. v. State of S.C.*, 752 F.2d 1193, 1202 (7th Cir. 1985). In fact, "district courts in this circuit have repeatedly addressed the question of whether *Lakeside* can be distinguished based on a nonresident defendant's solicitation of a contract. In a variety of circumstances, these courts have replied affirmatively." *Id.* at 1203 (collecting cases). As in those cases, it appears *Simi Valley* initiated the relationship with Shared Medical and solicited its services with respect to the MRI system. (Zahn Decl. (dkt. #12) ¶ 3.) Simi Valley and Shared Medical then negotiated over lease terms for over a year, with Simi Valley apparently bargaining for multiple quotes and price changes in June 2009, January 2010, May 2010, and June 2010. (*Id.* at ¶ 6.)[7] That makes this case more similar to *Madison Consulting* than to *Federated Rural Electric*. In *Madison Consulting*, the court found personal jurisdiction in large part because of the defendant's solicitation activities. 752 F.2d at 1203. In contrast, in *Federated Rural Electric*, the Seventh Circuit explicitly noted in finding no personal jurisdiction that it was unclear who had initiated contact and that the end result of such contact was that the plaintiff availed itself of the privilege of conducting

---

[7] Simi Valley asserts in its reply that only the dealings between the parties in regard to the disputed contract are relevant to minimum contacts analysis. It is not clear whether Simi Valley means to imply that these negotiations pertained to a *different* contract, rather than to the contract into which the parties ultimately entered, or whether it simply means to argue that prior negotiations leading up to the contract are not relevant to the jurisdictional analysis. If the former, then its challenge fails, because the court must resolve such a factual dispute in Shared Medical's favor; if the latter, then its argument fails as inconsistent with the Supreme Court's direction to consider "prior negotiations" in jurisdictional analysis surrounding a contract. *Burger King Corp.*, 471 U.S. at 479.

business in Washington, rather than the defendant reaching out to Wisconsin. *See* 18 F.3d at 395-96.

Additionally, unlike *Jadair*, this is not a case in which the *sole* contact with Wisconsin was that Shared Medical's business is located here. Rather, this case bears more similarity to *Burger King Corp.*, which involved "parties who 'reach[ed] out beyond one state and create[d] *continuing relationships and obligations* with citizens of another state.'" *Burger King Corp.*, 471 U.S. at 473 (emphasis added). Here, Simi Valley entered into an ongoing lease agreement with Shared Medical that continued for three years. The agreement provided not just for Shared Medical to ship the MRI system from Wisconsin to California, but also for Shared Medical to organize maintenance and respond to service calls, tasks necessarily coordinated from its Wisconsin offices. (*See* Compl. Ex. A (dkt. #1-3) 1-2.) Indeed, Simi Valley itself negotiated for a lease term that required Shared Medical to respond to service calls within one hour on the phone and four hours on-site from the initial service request. (*See* Zahn Decl. Ex. 1 (dkt. #12-1) 1.) Over the lifetime of the Lease, Simi Valley made nineteen calls to Wisconsin for routine service or maintenance. (Zahn Decl. (dkt. #12) ¶ 14.)[8] In the aggregate, Simi Valley's actions in soliciting goods and services from Shared Medical, as well as soliciting those services repeatedly, support a finding of personal jurisdiction here. *Cf. Daniel J. Hartwig Assocs., Inc.*, 913 F.2d at 1218 ("Two significant factors lead us to conclude that Kanner could reasonably foresee being subject to suit in a Wisconsin court. First, Kanner solicited Hartwig's services. Second, and more important,

---

[8] Simi Valley attacks these calls as insignificant, because they are "attempts to get the plaintiff to 'repair the malfunctioning machine.'" (Reply (dkt. #14) 7.) Simi Valley quotes *Jadair* out of context, however: the calls and letters in *Jadair* were post-sale attempts by Keeler to get the machine to work, rather than part of a bargained-for agreement in which a *lessor* (Shared Medical) took responsibility for servicing and maintenance throughout the expected ongoing relationship.

Kanner solicited those services on a number of occasions, thus creating a continuing relationship between himself and a resident of the forum state.").

Simi Valley also accepted Shared Medical's ongoing regulation of its activities, which likewise favors finding personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 480 ("In light of [Rudzewicz'] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the 'quality and nature' of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'"). Here, under the Lease, Simi Valley was required to adhere to Shared Medical's Site Planning Guide for use and operation of the MRI system and to "follow [Shared Medical's] exacting rules for use and operation" of the system. (*Id.* at ¶ 11; *see also* Compl. Ex. B (dkt. #1-4).) Following the quenched magnet in 2010, Simi Valley also made weekly reports of the MRI system's cryogen levels to Wisconsin to ensure proper magnet maintenance. (Zahn Decl. (dkt. #19) ¶ 19.) "[W]here a defendant has created 'continuing obligations' between himself and the residents of the forum, he manifestly avails himself of the privilege of conducting business in the forum." *Daniel J. Hartwig Assocs., Inc.*, 913 F.2d at 1219. Like the defendants in *Burger King Corp.*, Simi Valley "entered into a carefully structured . . . relationship that envisioned continuing and wide-reaching contacts" with Shared Medical in Wisconsin, *Burger King Corp.*, 471 U.S. at 480, and it is therefore subject to suit in this state.[9]

---

[9] Simi Valley also points out that the lease contains a California choice of law provision. It is true that the Seventh Circuit has noted that "an explicit choice-of-law provision in the contract might be relevant to the defendant's reasonable expectation of suit in the forum whose law is chosen." *Jadair*, 679 F.2d at 134 n.8. While a choice of law provision selecting California law, like the one here, might raise a strong inference that suit in California is proper, it does not necessarily follow that suit in Wisconsin is *im*proper, particularly where Simi Valley apparently did not negotiate for a California forum selection clause (or did so unsuccessfully). Stated another way, the choice of law

Simi Valley also points out that it never visited Wisconsin, nor does it have any property, facilities, officers or agents there. While it is undisputed that Simi Valley has never had a physical presence in Wisconsin, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court] ha[s] consistently rejected the notion that an absence of *physical* contacts can defeat personal jurisdiction there." *Burger King Corp.*, 471 U.S. at 476 (emphasis added). In fact, the Seventh Circuit has recognized that a contract may *necessarily* be based on telephone and mail contacts without that fact defeating jurisdiction. *See, e.g., Daniel J. Hartwig Assocs.*, 913 F.2d at 1219 n.3; *Heritage House Restaurants v. Continental Funding Grp.*, 906 F.2d 276, 283 (7th Cir. 1990) ("Continental created a relationship which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction."); *see also Madison Consulting Grp.*, 752 F.2d at 1203-04 ("We decline now to create a rule that would require a defendant to step across state lines as a predicate for personal jurisdiction."). Simi Valley's emphasis on its lack of *physical* presence in Wisconsin loses sight of the "constitutional touchstone" of personal jurisdiction analysis, which "remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp.*, 471 U.S. at 474 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Finally, Simi Valley argues that exercising personal jurisdiction will not comport with "traditional notions of fair play and substantial justice." Specifically, it argues that: (1) asking Simi Valley to litigate in Wisconsin places an unreasonable financial burden on it;

---

provision alone does not mean that Simi Valley could not have reasonably expected to be haled into court in Wisconsin.

(2) all of the physical evidence relating to the cause of the magnet quench and the witnesses are located in California; and (3) the events that gave rise to the claim here (the alleged quench and the repair services) took place in California.

The court does not believe these factors "can be said persuasively to outweigh the considerations discussed above and to establish the *unconstitutionality*" of Wisconsin's assertion of jurisdiction.  *Burger King Corp.*, 471 U.S. at 482 (emphasis in original). Certainly, litigation in this forum will not be as convenient for Simi Valley as would litigation in its home forum of California, but such inconvenience does not rise to the level of a constitutional violation.  *Id.* at 484 (inconvenience of asking Michigan franchisee to litigate in Florida did not "achieve *constitutional* magnitude").

In any event, Simi Valley's conclusory statement that the costs would be "an unreasonably inconvenient financial burden" is unsupported.  (*See* Reply (dkt. #14) 9.)  To the extent Simi Valley invokes "physical evidence" that is located in California, Simi Valley does not indicate what that "physical evidence" is, nor is it clear what physical evidence would even come into play in this breach of contract claim.  Additionally, Wisconsin has a substantial interest in protecting its domestic corporations and ensuring they receive the benefits of the bargains they make.  *See Consumer Prods. Research & Design, Inc. v. Jensen*, No. 06-C-625-S, 2007 WL 765237, at *5 (W.D. Wis. Mar. 9, 2007).  Therefore, the court finds that Shared Medical has established a *prima facie* case of personal jurisdiction and it will deny Simi Valley's motion to dismiss on those grounds.

**II. Venue**

Plaintiff rightly points out that Simi Valley's initial motion to dismiss made *no* argument as to improper venue. (*See* Def.'s Mot. to Dismiss (dkt. #9).) "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012).

Even if the court were to consider Simi Valley's perfunctory, single-paragraph argument in its reply, venue is proper here. Under 28 U.S.C. § 1391(b)(2), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." "In contract cases, courts have held that the delivery or non-delivery of goods and the payment or non-payment of money were significant events providing a basis for venue in the district where they were to occur." *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1016 (E.D. Wis. 2000) (collecting cases).

Here, as Shared Medical points out, its breach of contract claim arises from Simi Valley's failure to send an $80,000 payment to Shared Medical in this district. (*See* Compl. (dkt. #1) ¶¶ 33-47.) This makes venue in this district proper. *Accord PKWare*, 79 F. Supp. 2d at 1017 (venue was proper where defendants "were obliged under the agreement to deliver copies of software, make royalty payments and send sales reports to plaintiff in this district and allegedly failed to do so"); *see also, e.g.*, *Tyson Fresh Meats, Inc. v. Lauer Ltd., L.L.C.*, 918 F. Supp. 2d 835, 863 (N.D. Iowa 2013) (noting that "a breach of contract occurs where performance was to take place but did not" and finding venue proper in Iowa, where the contracts required Lauer to deliver hogs to Iowa, rather than Nebraska, where the hogs were raised). Simi Valley does not respond to these arguments, other than to state baldly, without citation or factual support, that "[t]he only 'events or omissions' giving rise

18

to Plaintiff's alleged claims against Simi Valley Hospital occurred in California."  (Reply (dkt. #14) 9.)

ORDER

IT IS ORDERED that defendant Simi Valley Hospital and Healthcare Services' motion to dismiss for lack of personal jurisdiction and improper venue (dkt. #9) is DENIED.

Entered this 25th day of February, 2014.

> BY THE COURT:
>
> /s/
> _____
> WILLIAM M. CONLEY
> District Judge